[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
FACTUAL BACKGROUND
The plaintiff, Timothy Meehan, filed an eight count complaint CT Page 1898 against the defendants, Yale-New Haven Hospital, Inc. and four of its employees and/or agents, Cynthia Warshaw, Janet Murphy, John Leventhal, M.D., and Julia Hamilton, C.I.S.W. (hereinafter "defendants"), on February 1, 1995, alleging malpractice, violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., recklessness, intentional interference with custodial rights, civil conspiracy, intentional infliction of emotional distress, defamation, and negligent infliction of emotional distress.
The plaintiff's causes of action arise from the allegedly improper and erroneous evaluation and diagnosis of plaintiff's minor daughter by the defendant Yale New Haven Child Sexual Abuse Clinic, as having been sexually abused by the plaintiff. According to the plaintiff, he and his wife were involved in a "deteriorating domestic condition", during which time his wife made allegations to the Fairfield Police Department that the plaintiff sexually abused his minor daughter. The Fairfield Police apparently referred plaintiff's wife to the Yale New Haven Child Sexual Abuse Clinic, operated by the defendant Yale New Haven Hospital. The plaintiff essentially alleges that in arriving at its finding that the plaintiff sexually abused his daughter, the Clinic improperly ignored requests by the plaintiff to be interviewed, failed to determine whether the allegations of abuse had been instilled in the child by plaintiff's wife, failed to conduct a proper medical, social and forensic evaluation, failed to follow procedures well-established in the field of child abuse detection, failed to have proper procedures in place for evaluation and diagnosis, and failed to render a sound diagnosis of his daughter. Defendant Cynthia Warshaw, an employee of the Clinic, testified at proceedings before the Honorable Edgar W. Bassick, III in May or June of 1993, that the defendant sexually abused his daughter. On June 11, 1993, Judge Bassick rendered a decision dissolving all orders against the plaintiff.
The plaintiff alleges that subsequent to the proceedings before Judge Bassick, the defendants conducted another meeting, which was a "sham", and then improperly contacted the Department of Children and Families and the police, notwithstanding that all orders against the plaintiff had been dissolved by Judge Bassick on June 11, 1993, and notwithstanding that both agencies had previously been contacted by the defendants. According to the plaintiff, this subsequent conduct was undertaken in bad faith because the defendants disagreed with Judge Bassick's findings and because they desired to aid the plaintiff's wife and support CT Page 1899 their own earlier findings.
On May 8, 1995, the plaintiff filed a revised complaint ("complaint") which asserts the same eight causes of action as the original complaint. The defendants filed a motion to strike the plaintiff's revised complaint, together with a memorandum of law, on June 19, 1995. The defendants argue that all of their statements are absolutely privileged under the common law judicial privilege because they were made in preparation for, or during, the judicial proceeding before Judge Bassick. The defendants also argue that they are mandatory reporters of child abuse under General Statutes § 17a-101, and that their conduct is therefore absolutely privileged under subsection (h) of that statute, which grants immunity from suit to mandatory reporters of child abuse. The defendant further argues that each of the plaintiff's causes of action is legally insufficient and should be stricken.
DISCUSSION
 I.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Novametrix Medical Systems v. BOCGroup, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992). In considering a motion to strike, courts "construe the facts alleged in the complaint in a light most favorable to the pleader. If facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied." RK Constructors. Inc. v. Fusco Corp., 231 Conn. 381,384, 650 A.2d 153 (1994), citing Alarm Applications Co. v.Simsbury Volunteer Fire Co., 179 Conn. 541, 545, 427 A.2d 822
(1980).
 II.
The defendants have moved to strike the plaintiff's complaint in its entirety on the ground that all of the statements and conduct at issue are absolutely privileged under the common law judicial privilege because they were made either during or in preparation for the judicial proceeding before Judge Bassick. The defendants also argue that if some or all of their statements and conduct are not immunized by the common law judicial privilege, CT Page 1900 they are absolutely privileged because they were mandated by the child-abuse reporting statute, General Statutes § 17a-101, which provides reporters of abuse with immunity from civil and criminal liability. The court will not consider these defenses in deciding a motion to strike.
Privilege is an affirmative defense which must be specially pleaded by a defendant, as it assumes facts consistent with the plaintiff's complaint but shows, notwithstanding, that he has no cause of action. See Practice Book § 164. See also Miles v.Perry, 11 Conn. App. 584, 594 n. 8, 529 A.2d 199 (1987); Atwaterv. Morning News Co., 67 Conn. 504, 510-11, 34 A. 865 (1896); Wright, FitzGerald Ankerman, Connecticut Law of Torts §§ 155 and 157 (3d Ed. 1991).[1]
 III.
In their memorandum of law, the defendants also argue that each count of the plaintiff's complaint is legally insufficient and should be stricken.
 A.
The defendants have moved to strike count one of the plaintiff's complaint, alleging medical malpractice, on the ground that the defendants owed no duty of care to the plaintiff. In opposition, the plaintiff argues that the defendants owed a duty to him, as father of the minor child, to conduct their investigation in an impartial manner in accord with applicable standards of care, despite the fact that the plaintiff did not retain the plaintiffs.[2]
"Malpractice is commonly defined as `the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services[.]'"(Internal footnote omitted, internal quotation marks omitted.). Barnes v. Schlein, 192 Conn. 732,735, 473 A.2d 1221 (1984). "There are four essential elements to a malpractice action. They are: (1) the defendant must have a duty to conform to a particular standard of conduct for the plaintiff's protection; (2) the defendant must have failed to measure up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendant's conduct must be the CT Page 1901 cause of the plaintiff's injury." LaBieniec v. Baker, 11 Conn. App. 199,202-03, 526 A.2d 1341 (1987).
Pursuant to this standard, the plaintiff, Timothy Meehan, must first establish that the defendants, Yale New Haven Hospital and Yale New Haven Child Sexual Abuse Clinic and their employees, owed a duty to him to conform to a particular standard of conduct respecting the evaluation of his daughter. Id. In order to satisfy this requirement, the plaintiff must establish that a physician-patient relationship existed between the defendants and himself, for "there can be no actionable negligence on the part of a physician where there is no physician-patient relationship. "Ali v. Community Health Care Plan, Inc., Superior Court, judicial district of New Haven, Docket No. 364055 (July 25, 1995, Martin, J.); Burns v. Hanson, Superior Court, judicial district of Middlesex, Docket No. 72342 (March 8, 1995, Stanley, J.).[3]
Here, the plaintiff has made no allegations in his complaint that a physician-patient relationship existed between the defendants and himself. Any physician-patient relationship that existed in this case existed between the defendants and the plaintiff's daughter. Thus, the plaintiff's claim comes closer to a claim for bystander emotional distress rather than a claim for medical malpractice. Connecticut does not recognize claims of bystander emotional distress for medical malpractice perpetrated on another. See Maloney v. Conroy, 208 Conn. 392, 393,545 A.2d 1059 (1988).
In the absence of allegations of a physician-patient relationship, the plaintiff cannot establish that the defendants owed him a duty. Therefore, the plaintiff cannot, as a matter of law, establish a claim for medical malpractice against the defendants. Accordingly, the defendants' motion to strike count one of the plaintiff's complaint is granted.[4]
 B.
The defendants have moved to strike count two of the plaintiff's complaint, alleging violations of the Connecticut Unfair Trade Practices Act, General Statutes §§ 42-110a et seq. ("CUTPA"), on the ground that the conduct alleged by the plaintiff does not constitute an unfair or deceptive trade practice within the meaning of the statute.
General Statutes § 42-110b(a) provides: "No person shall CT Page 1902 engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Id. The issue of whether an act or practice is unfair in violation of CUTPA is determined by applying the so-called cigarette rule, which asks: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it caused substantial injury to consumers, [competitors or other businessmen]." Normand JosefEnterprises, Inc. v. Connecticut National Bank, 230 Conn. 486,522, 646 A.2d 1289 (1994).
"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Citations omitted, internal quotation marks omitted.)Normand Joseph Enterprises, Inc. v. Connecticut National Bank, supra.
In defense of his position that the defendants violated CUTPA, the plaintiff argues that General Statutes § 17a-101
(f) is "statutorily enunciated public policy" which was breached by the defendants. It is true that the public policy of this state is directly derived from our state statutes and the provisions of our state constitution. Sheets v. Teddy's FrostedFoods, Inc., 179 Conn. 471, 476, 427 A.2d 385 (1980). See alsoLockwood v. Professional Wheelchair Transportation. Inc.,37 Conn. App. 85, 94, 654 A.2d 1252 (1995). Plaintiff's argument, however, is self-defeating.
All of the defendants arguments essentially address the lack of good faith in the defendants' activities. Whether or not the defendants acted within the scope of the statute (i.e. in good faith) relates to the question of whether their conduct is privileged and does not bear upon whether they breached an alleged duty to the plaintiff or whether they failed to conform to the statutes. Here, the allegations of the complaint itself show that reports made by the defendants were to agencies to which the defendants were required to report under the statute. CT Page 1903 Each of the defendants is a required reporter under General Statutes § 17a-101 (b), and the reports were made to the agencies described in § 17a-101 (c). Thus, the evidence supports the position that the defendants' activities were undertaken in accordance with the statutorily mandated duty to report their findings of child abuse to certain authorities. If a statute itself represents a statement of public policy, it necessarily follows that conduct undertaken in the performance of a statutory mandate in accordance with the terms of the statute cannot constitute a violation of public policy. As aforesaid, whether or not the defendants acted in good faith relates only to the question of whether their conduct is privileged. Their alleged failure to act in good faith cannot, therefore, constitute a statutory or public policy violation in support of the plaintiff's CUTPA claim. There are no allegations in the complaint that any other public policy was violated.
Absent facts sufficient to demonstrate that public policy, as established by statutes, the common law, or otherwise, has been violated, the plaintiff cannot meet the first prong of the cigarette test. Normand Josef Enterprises, Inc. v. ConnecticutNational Bank, supra, 230 Conn. 522. Furthermore, although the plaintiff may have alleged facts sufficient to meet the second prong of the cigarette test, the plaintiff has failed to plead facts sufficient to establish that he was a consumer, competitor or other businessman, who was substantially injured, as required by the third prong of the cigarette test. Id. Accordingly, the defendant's motion to strike the second count of the plaintiff's complaint is granted.
 C.
The defendants have moved to strike count three of the plaintiff's complaint, alleging recklessness, on the grounds that it is legally insufficient and is merely repetitious of count one. The plaintiff argues that the recklessness count contains additional factual allegations beyond those pleaded in the first count, alleging activities amounting to "a knowing action on the part of the defendants involving an unreasonable risk of harm to the plaintiff in violation of the duty they owed to the plaintiff." (Plaintiff's Brief, 34).
"Recklessness is a state of consciousness with reference to the consequences of one's acts. It is more than negligence, more than gross negligence. The state of mind amounting to CT Page 1904 recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." (Citations omitted, internal quotation marks omitted.) Dubay v. Irish,207 Conn. 518, 532, 542 A.2d 711 (1988). Reckless, wanton, and willful conduct generally mean the same thing, and each "tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . . It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention. . . ." Id., 533, citing W. Prosser W. Keeton, Torts (5th Ed.) § 34.
As discussed in part A of this section, the plaintiff is unable to demonstrate that the defendants owed any duty to him. Since the plaintiff is unable to assert a cause of action in negligence based on the defendants' conduct, that conduct cannot be said to rise to the level of recklessness. Accordingly, the defendants' motion to strike the third count of the plaintiff's complaint is granted.
 D.
The defendants have moved to strike count four of the plaintiff's complaint, alleging intentional interference with custodial rights, on the ground that the plaintiff has failed to allege that his child was physically and unlawfully taken from his custody by the defendants. The plaintiff argues that the fourth count is sufficient because the allegations demonstrate that the defendants' actions were intended to thwart the decision of Judge Bassick issued on June 11, 1993 and therefore to deprive the plaintiff of custody.
Although Connecticut recognizes the tort of custodial interference, "[i]n order to impose liability on a third party for conspiring with or aiding another in the removal of children from the custodial parent, the third party must have conspired with, or aided the other, to do a criminal or an unlawful act or a lawful act by criminal or unlawful means." (Internal quotation marks omitted.) Marshak v. Marshak, 226 Conn. 652, 665-66,628 A.2d 964 (1993). The factual prerequisite for the tort of child abduction or custodial interference is the unlawful custody of a CT Page 1905 child, and civil liability cannot be predicated on acts that were not themselves unlawful when they occurred. Id., 666. Thus, "[w]hen the parents are by law jointly entitled to the custody and earnings of the child, no action can be brought against one of the parents who abducts or induces the child to leave the other." (Internal quotation marks omitted.) Id. In Marshak, the court declined to extend liability to third parties who allegedly assist a parent in abducting a minor child where that parent was entitled to joint custody of the child at the time of the alleged aiding. Id., 666-68. The reason for not extending liability in such a situation is that the third party is assisting the parent in something "that at the time was not unlawful". Id., 668.
Here, as in Marshak, there is no allegation that the plaintiff's (former) spouse was not entitled to custody of the minor child at any time during the course of events alleged in the complaint. Thus, under the Marshak standard, the defendants could not have intentionally interfered with the plaintiff's custodial rights because the plaintiff's (former) spouse was entitled to custody of the minor child at all times relevant to the acts alleged in the complaint. Accordingly, the court finds as a matter of law that the plaintiff cannot state a cause of action for intentional interference with custodial rights. The defendants' motion to strike the fourth count of the plaintiff's complaint is granted.
 E.
The defendants have moved to strike count five of the plaintiff's complaint, alleging civil conspiracy, on the ground that the complaint fails to allege that the defendants engaged in any unlawful act. In opposition, the plaintiff argues that the defendants committed unlawful acts, or lawful acts by unlawful means, by acting to circumvent the court decision issued by Judge Bassick.
"The requisites of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, 3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." Williams v. Maislen, 116 Conn. 433,437, 165 A. 455 (1933). See also Marshak v. Marshak, supra,226 Conn. 665. To be precise, "there is no such thing as a civil action for conspiracy. The action is for damages caused by acts CT Page 1906 committed pursuant to a formed conspiracy rather than by the conspiracy itself." Marshak v. Marshak, supra, 226 Conn. 669, citing Cole v. Associated Construction Co., 141 Conn. 49, 54,103 A.2d 529 (1954). Generally speaking, "where the act done would not [be] a ground for damages if done by one, the same act will not be rendered actionable because done by several in pursuance of an agreement." Santoro v. Mack, 108 Conn. 683, 693, 145 A. 273
(1929). Thus, the existence of a valid underlying cause of action is a prerequisite to an action for conspiracy. See Williams v.Maislen, supra, 116 Conn. 437-38.
In his complaint, the plaintiff alleges that the defendants conspired to "interfere with and deprive the plaintiff of the love, affection, custody, companionship and society of his children and to interfere with plaintiff's relationship with his children, and/or to circumvent the orders of the Superior Court dated 6/11/93[.]". (Revised Complaint, 24). Thus, the plaintiff's conspiracy count is dependent upon the validity of count four, alleging intentional interference with custodial rights. As discussed above, the court finds that the plaintiff cannot state a claim for intentional interference with custodial rights, and that the alleged actions of the defendants during the periods of time alleged in the complaint were not unlawful.[5]
The plaintiff has not sufficiently pleaded an underlying cause of action upon which his conspiracy count can be based, and he has not met the second prong of the Maislen test, which requires that the defendants committed an unlawful act or a lawful act by unlawful means. Therefore, the defendants' motion to strike count five of the plaintiff's complaint is granted.
 F.
The defendants have moved to strike count six of the plaintiff's complaint, alleging intentional infliction of emotional distress, on the ground that the defendants conduct was not extreme and outrageous as a matter of law. The plaintiff argues that count six contains facts sufficient to support a cause of action for intentional infliction of emotional distress.[6]
"In order to prevail in a case for liability under . . . the intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress, or that he knew or should have known CT Page 1907 that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Citations omitted, emphasis omitted, internal quotation marks omitted). Petyan v. Ellis, 200 Conn. 243, 253,510 A.2d 1337 (1986). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) DeLaurentis v.New Haven, 220 Conn. 225, 266, 597 A.2d 807 (1991). "A line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility. (Citations omitted, internal quotation marks omitted.) Whelan v. Whelan,41 Conn. Sup. 519, 522-23, 588 A.2d 251 (1991). Thus, "`[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id., citing 1 Restatement (Second), Torts § 46, p. 73, comment (d).
The court finds that the defendants' conduct is not extreme or outrageous within the meaning of Connecticut law. The allegations of the complaint sufficiently demonstrate that all of the defendants' conduct was undertaken in preparation for, or made during, the course of a judicial proceeding, or that it was undertaken pursuant to statutory mandate. This does not necessarily mean that the defendants' conduct will be found absolutely or qualifiedly privileged if and when those defenses are properly raised. Rather, the facts demonstrate that the defendants' were acting pursuant to a judicial or statutory duty. Whether or not they acted outside the scope of their judicially or statutorily mandated duty is not at issue. Nevertheless, because the defendants' were acting pursuant to the commands of our judiciary and our legislature, their conduct, as a matter of law, cannot be considered extreme or outrageous.
Professionals who examine children for purposes of determining the existence of child abuse are required to report any positive findings of abuse to certain authorities. General Statutes § 17a-101. No professional making a diagnosis is infallible. The legislature surely recognized that an occasional erroneous finding would be reported as a result of the statutory CT Page 1908 requirement, but nevertheless chose to promote the greater social benefit which results from reporting all suspected cases of child abuse to the appropriate authorities. Thus, the legislature must have recognized that, encompassed within those cases reported pursuant to the statute, there would be an occasional erroneous report. The strong public policy statement in General Statutes § 17a-101 (a) supports this proposition, as does the grant of immunity to good faith reporters under section (f) of the statute.[7]
In light of the foregoing, the court finds that the defendants' conduct is not, as a matter of law, extreme or outrageous. Thus, the plaintiff cannot state a claim for intentional infliction of emotional distress. Accordingly, the defendants' motion to strike count six of the plaintiff's complaint is granted.
 G.
The defendants have moved to strike count seven of the plaintiff's complaint, alleging defamation, on the ground that their statements were absolutely privileged because they were made for purposes of a judicial proceeding and/or pursuant to General Statutes § 17a-101.
As aforesaid, the defendants' privilege defense(s) are not properly before the court, and the court will not consider them for purposes of this motion. Thus, the plaintiff's cause of action alleging defamation cannot be defeated on the ground that the defendants' statements were privileged. The question, then, is whether the plaintiff has sufficiently alleged a cause of action for defamation.
"Defamation is made up of the twin torts of libel and slander — the one being, in general, written while the other in general is oral. . . ." Prosser Keeton, The Law of Torts § 111, p. 771 (5th Ed. 1984 Supp. 1988). It requires the plaintiff to demonstrate that the defendant(s) made a false, defamatory, and unprivileged statement about the plaintiff to a third person. Id. Additionally, "[a]n indispensable element of an action of slander is injury to the reputation of the person defamed." Urban v.Hartford Gas Co., 139 Conn. 301, 308, 93 A.2d 292 (1952). "When . . . defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation." Id. Courts have "recognized slander to be actionable CT Page 1909 per se where the utterance falsely charges a crime involving moral turpitude or to which an infamous penalty is attached."Moriarty v. Lippe, 162 Conn. 371, 383, 294 A.2d 326 (1972). "A general definition . . . [of] moral turpitude [is that it] involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellowman or society in general, contrary to the accepted rule of right and duty between man and law." Id. "The standard of fault applicable to [defamation of] private individuals [as opposed to public figures or officials] merely requires the plaintiff to prove a negligent misstatement of facts." (Internal quotation marks omitted.) Miles v. Perry, 11 Conn. App. 584, 588, 529 A.2d 199
(1987).
When viewed in the light most favorable to the plaintiff, the allegations in the complaint sufficiently state a cause of action for defamation. If the defendants' actions are ultimately found to be privileged, the defendants will have a defense to the defamation action. However, for purposes of this motion to strike, the plaintiff has sufficiently pleaded a cause of action for defamation, alleging that the defendants published a false, unprivileged statement about the plaintiff involving a crime of moral turpitude.
Accordingly, the defendants' motion to strike count seven of the plaintiff's complaint is denied.
 H.
The defendants have moved to strike count eight of the plaintiff's complaint, which appears to allege negligent infliction of emotional distress. The defendants argue that, as with the plaintiff's medical malpractice claim, the defendants owed the plaintiff no duty of care.
A cause of action for negligent infliction of emotional distress first requires that the facts alleged by the plaintiff demonstrate the elements necessary to establish negligence.Montinieri v. Southern New England Telephone Co., 175 Conn. 337,341, 398 A.2d 1180 (1978). Additionally, the plaintiff must plead facts to demonstrate "that the defendant should have realized that the conduct involved an unreasonable risk of causing the distress [to the plaintiff.]" Id., 343. It is not necessary to allege that the plaintiff's emotional distress resulted in bodily injury to the plaintiff. Id., 344. CT Page 1910
As discussed in part A of this section, the plaintiff cannot establish that the defendants owed any duty to him. As such, the plaintiff will be unable to assert a claim for negligent infliction of emotion distress. See Montinieri v. Southern NewEngland Telephone Co., supra, 175 Conn. 341. Therefore, the defendants' motion to strike count eight of the plaintiff's complaint is granted.
CONCLUSION
For the foregoing reasons, the court grants the defendants' Motion To Strike (#132) as to counts one, two, three, four, five, six and eight of the plaintiff's revised complaint, and denies the motion to strike as to count seven.
So ordered.
MICHAEL HARTMERE JUDGE OF THE SUPERIOR COURT