[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff's amended revised complaint alleges breach of contract; tortious interference with the contractual CT Page 6135 relationship; intentional infliction of extreme emotional distress; negligence; a CUTPA violation; and a violation by the defendants, while acting under color of law, of certain rights guaranteed by the state and federal constitutions and Title 42, Sections 1983 and 1988, of the United States Code.
The defendants moved to strike the complaint on the sole ground that each of the six counts failed to state a cause of action upon which relief may be granted. A review of the factual allegations, which must be accepted as true in considering the motion to strike, leads to the conclusion that the motion must be granted.
The plaintiff was a little league baseball coach with Branford Junior Baseball, Inc. which operated under a charter from Little League Baseball, Inc. Prior to the summer of 1993, the plaintiff verbally agreed with the defendants that he would coach a little league team for the season. In the summer of 1993, the defendants awarded the plaintiff the position of all-star coach. On July 13, 1993, defendants Lucibello and Dandio told the plaintiff to instruct one of his players not to play during a regular season game on July 14th. However, the player and his parents decided that the youngster should play and the plaintiff allowed him to do so.
On July 15, 1993, defendant Sobolewski suspended the plaintiff from coaching for allowing the youngster to play. This suspension occurred without a meeting being called, without affording the plaintiff prior notice nor informing him of the nature of the charges against him and denying the plaintiff an opportunity to appear and answer the charges against him as required under the provisions of article III, § 4 and article IV, § 3 of the league by-laws.
The plaintiff further alleges that the defendants caused a Branford police officer, acting in his official capacity and under color of law, to telephone the plaintiff's wife and threaten to arrest the plaintiff for criminal trespass should the plaintiff appear on the field for the game scheduled for July 16, 1993. This conduct prevented the plaintiff from appearing on the playing field and coaching the game played on that date.
The defendants' motion to strike was accompanied by a memorandum of law in accordance with § 155 of the Practice Book. The plaintiff failed to file a memorandum in opposition to CT Page 6136 the motion but did present oral argument in opposition to the motion at a hearing held on September 9, 1996. "[D]espite the amendment to the Connecticut Practice Book § 155, the filing of a memorandum in opposition to a motion to strike is mandatory, and the failure to file such may still serve as a ground for granting a motion to strike." Collins v. Milford Health Care, Superior Court, Judicial District of Ansonia-Milford at Milford, Docket No. 046662 (July 17, 1995, Comerford, J.). Thus a "court could grant the motion to strike on the ground that the [plaintiff] failed to file an opposing memorandum of law."Centerbank v. GRI Investment Co., Superior Court, Judicial District of Waterbury, Docket No. 117702 (May 12, 1994, Sylvester, J.).
The court may, however, address the merits of a motion to strike even though the plaintiff did not file a memorandum of law in support of its opposition to the motion. Honan v. Chamberlain, Superior Court, Judicial District of Danbury, Docket No. 313387 (August 12, 1994, Mihalakos, J.). In Fitzpatrick v. East HartfordB.P.U. Elks, Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 580905 (January 25, 1991, Clark, J.), the court held that "[a]lthough a timely opposing memorandum is required, the failure to so file it can be waived by the trial court."
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike the court is limited to the facts alleged in the complaint . . . [and] must construe the facts in the complaint most favorably to the plaintiff." (Citations omitted.). Waters v.Autuori, 236 Conn. 820, 825 (1996). "The trial court may not seek beyond the complaint for facts not alleged . . ." Cavallo v. DerbySavings Bank, 188 Conn. 281, 285-86 (1982). "The trial court, in passing upon the defendants' motion, properly [can consider] only [those grounds specified]." Blancato v. Feldspar Corporation,203 Conn. 34, 44 (1987).
The Plaintiff's allegation of breach of an oral contract specifies neither a proper party in interest nor the consideration necessary for a binding contract. The corporate entities are not named as defendants. Nor are the individual defendants cast as agents, servants or employees of Branford Junior Baseball, Inc. and/or Little League Baseball, Inc. acting within the scope of their employment. Moreover, if the plaintiff CT Page 6137 reasonably could be considered an employee, in the absence of any consideration, it would be an at-will hiring terminable by either party. The plaintiff could be discharged at any time so long as the discharge was not against public policy. There is no allegation of breach of contract in violation of public policy.
"In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties. . . . The mutual understanding must manifest itself by a mutual assent between the parties." (Citations omitted.). Steinberg v. Reding, 24 Conn. App. 212, 214
(1991). Also, the contract "must be definite and certain as to its terms and requirements." Augeri v. C. F. Wooding Co.,173 Conn. 426, 429-30 (1977). Basic to the existence of any valid contract is the necessity of valid consideration. State NationalBank v. Dick, 164 Conn. 523, 529 (1973) (the doctrine of consideration is fundamental to the law of contracts; where there is no consideration, an executory contract is unenforceable.). The failure to allege facts sufficient to show the existence of a contract requires the court to grant the motion to strike this count.
The second count of the complaint incorporates the allegations of count one and further alleges tortious interference with the contract. Our courts have "long recognized a cause of action for tortious interference with contract rights or other business relations." Kelley Property Development, Inc.v. Lebanon, 226 Conn. 314, 340 n. 30 (1993). "The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendants' knowledge of that relationship, the intent to interfere with it, and the consequent actual loss suffered by the plaintiff." Collum v. Chapin,40 Conn. App. 449, 452 (1996); Hart, Nininger Campbell Associates,Inc. v. Rogers, 16 Conn. App. 619, 629 (1988). The plaintiff however is required "to plead and prove at least some improper motive or improper means." Kakadelis v. DeFabritis,191 Conn. 276, 279 (1983); Blake v. Levy, 191 Conn. 257, 262 (1983).
The motion to strike count two is granted for the same reasons stated regarding count one. Moreover, there is no factual allegation to support a conclusion of tortious interference by a third party with the contractual parties. "In Connecticut a party to a contract cannot be liable for tortious interference with that contract." Urashka v. Griffin Hosp. , 841 F. Sup. 468, 475
(D.Conn. 1994); also, see Multi-Service Contractor, Inc. v. Vernon, CT Page 6138193 Conn. 446, 451 (1984) ("there can be no intentional interference with contractual relations by someone who is directly or indirectly a party to the contracts.").
The allegations in count two fail to assert facts which would give rise to a contract between the plaintiff and the baseball league organizations. "The burden rests on the plaintiff to allege a recognizable cause of action, and it is not sufficient that a complainant refer to a basis of liability by some distinctive name . . . the complainant is required to set forth facts upon the basis of which, if true, he may be able to establish in law a right to relief. . . ." Research Associates,Inc. v. New Haven Redevelopment Agency, 157 Conn. 587, 588
(1968).
The third count alleges intentional infliction of emotional distress. The factual basis of this claim is that the defendant Sobolewski telephoned the plaintiff to suspend him from his coaching duties after the plaintiff disregarded instructions from defendants Lucibello and Dandio not to allow a youngster to play in one of the scheduled games. During the telephone call, the plaintiff protested that he could not be suspended without being given notice and a hearing.
Sobolewski replied, "Oh, no? Watch me." The plaintiff further claims that subsequent to the call from Sobolewski, the defendants caused a police officer to telephone the plaintiff's wife and "threaten that if the plaintiff so much as stepped onto the field at the all-star baseball game . . ." he would be arrested for criminal trespass. These actions by the defendants are alleged to be extreme and outrageous and carried out intentionally with the knowledge that "such actions probably would cause the plaintiff to suffer extreme emotional distress."
A cognizable claim of intentional infliction of emotional distress must establish: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe."Petyan v. Ellis, 200 Conn. 243, 253 (1986). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for [the] court. Only where reasonable minds CT Page 6139 can differ does it become an issue for the jury." Parsons v.Sikorsky Aircraft Division, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 280394 (March 1, 1996, Levine, J.), quoting Reed v. Signode Corp., 652 F. Sup. 129, 137
(D.Conn. 1986).
A "more appropriate manner of testing whether the conduct and emotional distress reached the threshold required by the rule would be by summary judgment. . . . The court under a motion for summary judgment is able to consider the actual facts rather than those that could be proved under the allegations of the complaint construed in a manner most favorable to the plaintiff." Mellalyv. Eastman Kodak Co., 42 Conn. Sup. 17, 19 n. 3 (1991).
Rudeness, insulting behavior, poor manners or slights that cause hurt feelings are not what rend society's fabric and give rise to an action for intentional infliction of emotional distress. Generally, "it is the intent to cause injury that is the gravamen of the tort. . . ." DeLaurentis v. New Haven,220 Conn. 225, 267 (1991). For liability to exist, the threshold for behavior begins "`where conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Whelan v. Whelan,41 Conn. Sup. 519, 523 (1991), quoting 1 Restatement (Second), Torts
§ 46, comment (d), p. 73.
Measured by this standard, the plaintiff fails to begin to commence setting forth a factual basis for his claim of intentional infliction of emotional distress amidst the rough and tumble of everyday life. "As Prosser and Keeton explain, `when a citizen who has been called a son of a bitch testifies that the epithet has destroyed his slumber, ruined his digestion, wrecked his nervous system, and permanently impaired his health, other citizens who on occasion have been called the same thing without catastrophic harm may have legitimate doubts that he was really upset, or that if he were his sufferings could possibly be so reasonable and justified under the circumstances as to be entitled to compensation. W. Prosser W. Keeton, [Torts (5th Ed. 1984) § 12,] p. 59.'" Whelan v. Whelan, supra, at 522.
The plaintiff's fourth count alleges violations of certain rights guaranteed protection under the fourth andfourteenth amendments of the federal constitution. He claims that the method of his termination deprived him of procedural due process; that CT Page 6140 he was denied his right to peacefully assemble; and, further, that he was deprived of his liberty interest in continuing to serve as the little league coach. The factual basis for these claims, discussed earlier, does not warrant repeating.
The direct answer to the plaintiffs factual allegations is that there is a complete failure to set forth any facts that would tend to show a state-created entitlement as to his coaching position and subsequent suspension or any state action regarding the alleged denial of his right to peacefully assemble. Our not too distant history has graphically illustrated that such a right must be asserted before it can be cognizably denied. Title42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, or any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law."
"`To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Wilsonv. Hryniewicz, 38 Conn. App. 715, 719-20, cert. den.,235 Conn. 918 (1995), quoting West v. Atkins, 487 U.S. a, 48,108 S.Ct. 2250, 101 L.Ed.2d 40 (1987).
"These two elements denote two separate areas of inquiry: the plaintiff must prove a constitutional or statutory violation and that violation must have been committed by the defendant acting under color of law." Wilson v. Hryniewicz, supra, at 720. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. . . . The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albrightv. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed. 807
(1994).
"To create a constitutionally protected liberty interest, a state regulation must employ language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must be employed". . . . It is only through the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates that a liberty interest CT Page 6141 arises." Silano v. Sag Harbor Union Free School Dist. Bd.,42 F.3d 719, 724 (2d Cir. 1994).
After alleging a contract between private parties, the plaintiff attempts to elevate an alleged breach of that contract to the dimension of a violation of constitutional rights. The due process clause protects something more than an ordinary contract right. Its protection "is sought in connection with a state's revocation of a status, an estate within the public sphere characterized by a quality of either extreme dependence . . . or permanence . . . or sometimes both. . . ." (Emphasis omitted; footnote and internal quotation marks omitted.) S D MaintenanceCo., Inc. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988). "A contract dispute . . . does not give rise to a cause of action under section 1983." Costello v. Town of Fairfield, 811 F.2d 782,784 (2d Cir. 1987).
Nothing in the plaintiff's statement of facts even remotely indicates any state sponsored or authorized action, even by way of condonation, resulting in a violation of rights protected by "`the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, [and which] applies to acts of the states, not to acts of private persons or entities.' Rendell-Baker v. Kohn,457 U.S. 830, 837, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)." State v.Holliman, 214 Conn. 38, 43 (1990). The fourteenth amendment to the United States constitution guarantees that "[n]o state shall . . . deprive any person of life, liberty or property, without due process of law. . . ." U.S. Const., amend. XIV. Its purpose is to protect a person from "conduct that may be fairly characterized as `state action.'" State v. Holliman, supra, quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 924,102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).
Section 1983 of 42 U.S.C. serves as a vehicle or "method for vindicating federal rights elsewhere conferred . . . [thus requiring that the] first step in any such claim is to identify the specific constitutional right allegedly infringed." Albrightv. Oliver, supra. The various liberty interests protected by the constitution are many and often have been delineated as: "freedom from bodily restraint . . . the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship god according to the dictates of his own conscience, and generally to enjoy those privileges long CT Page 6142 recognized . . . as essential to the orderly pursuit of happiness by free men." Board of Regents v. Roth, 408 U.S. 564, 572,92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
"[T]he law affords constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, education. . . . Our cases recognize the right of the individual . . . to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. . . . Our precedents have respected the private realm of family life which the state cannot enter. . . . These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by theFourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life." Planned Parenthood of Southeastern PA. v.Casey, 505 U.S. 833, 851, 112 S.Ct. 2791, 123 L.Ed.2d 674 (1992).
The liberty interests protected from governmental intrusion by the constitution would clearly be trivialized, if not denuded of meaning, were a court to accept the plaintiff's claims as constitutional in character or dimension. The claim that his right to assemble and to speak freely were abridged because of the message given to the plaintiff by his wife, purportedly from a Branford police officer, is void of any facts that would support a reasonable belief that an officer was acting under color of law. One test of his belief would have been to exercise his rights by going where he had every right to be as a member of the public — the public grounds where the all star game was held. Instead, the plaintiff claims that the message given to him by his wife deprived him of his right to peacefully assemble in the public spaces because the plaintiff chose not to exercise rights by staying away from the town's public grounds.
The plaintiff's failure to exercise his rights illustrates the failure to state allegations necessary to establish a nexus between protected rights and a deprivation of those rights under color of law. Inaction, without more, cannot beget state action in deprivation of plaintiff's rights. The factual allegations of the fourth count are insufficient to state a cause of action and must be stricken.
The fifth count alleges a CUTPA violation. "CUTPA, by its own CT Page 6143 terms, applies to a broad spectrum of commercial activity. . . . The entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." Fink v. Golenbock, 238 Conn. 183, 212-13
(1996). "The statute thus applies, by its terms, only to parties that have engaged in the advertising, selling, renting, leasing or distribution of goods." Burkert v. Petrol Plus of Naugatuck,Inc., 216 Conn. 65, 85 (1990).
None of the plaintiff's factual allegations fall within the ambit of Section 42-110a(4) of the General Statutes nor has the court found any decision or line of reasoning to support a claim that CUTPA was intended to provide relief under the facts of this case. While it is beyond serious dispute that the Act was intended to provide protection to a class of individuals much broader than consumers, Fink v. Golenbock, supra, at 215, the motion to strike the fifth count is granted because the plaintiff failed to allege any "acts performed in the course of trade or business."
The sixth count of the complaint alleges that the defendants were negligent. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." RD Constructors, Inc. v. FuscoCorp., 231 Conn. 381, 384 (1994). "The existence of a duty is a question of law and [o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." RK Constructors,Inc. v. Fusco Corp., supra.
"The elements of duty and breach require that a defendant's conduct constitutes fault in the performance of a duty owed to a plaintiff." Coste v. Riverside Motors, Inc., 24 Conn. App. 109,112 (1991). Merely stating, as he has in his complaint, that "the defendants acted negligently . . . and caused the plaintiff to suffer . . . injuries," falls several elements short of the table. The failure to allege a duty owed and a breach of that duty is insufficient for fact pleading. "The burden rests on the plaintiff to allege a recognizable cause of action, and it is not sufficient that a complaint refer to a basis of liability by some distinctive name . . . the complainant is required to set forth facts upon the basis of which, if true, he may be able to establish in law a right to relief. . . ." Research Associates,Inc. v. New Haven Redevelopment Agency, 157 Conn. 587, 588
(1968). The motion to strike the sixth count is granted. CT Page 6144
BY THE COURT
LEANDER C. GRAY, JUDGE