## BRENDA WHELAN *v.* MICHAEL P. WHELAN

| SUPERIOR COURT | JUDICIAL DISTRICT OF WATERBURY | FILE NO. 90529 |

Memorandum filed January 15, 1991

*Donald C. Simmons,* for the plaintiff.
*Kernan & Henry,* for the defendant.

BLUE, J. This is an action for damages brought by the plaintiff against her former husband for conduct that allegedly occurred prior to their divorce. The defendant has moved to strike the entire complaint claiming that it "represents a 'back door' attempt to

---

[15] Teresa has indicated that she does not oppose these orders.

obtain dissolution of marriage support and alimony orders." The defendant also moves to strike the plaintiff's claim for punitive damages. For the reasons discussed below, the motion to strike is granted only as to the latter claim.

The court's task in this matter is made difficult by two facts. First, the amended complaint is poorly drafted and indiscriminately mixes claims of fraud and of intentional infliction of emotional distress. Second, the motion to strike is directed at the entire complaint rather than at selected portions, except as to the part directed to the claim for punitive damages, which will be discussed separately below. Insofar as the motion to strike is directed at the entire complaint, it "must . . . fail if any of the plaintiff's claims are legally sufficient." *Doyle* v. *A & P Realty Corporation*, 36 Conn. Sup. 126, 127, 414 A.2d 204 (1980); see *Water Commissioners* v. *Robbins*, 82 Conn. 623, 633, 74 A. 938 (1910).

The facts giving rise to the plaintiff's claims must be taken from her amended complaint. *Kelbride* v. *Dushkin Publishing Group, Inc.*, 186 Conn. 718, 719, 443 A.2d 922 (1982). The plaintiff claims that on April 6, 1987, while she was married to and living with the defendant, he falsely told her that he had tested positive for acquired immune deficiency syndrome (AIDS). He further told her that he wanted her to take their son to her original home in Canada so that they would not see him suffer and die. She alleges that this false statement, which she relied upon as evidenced by her going to Canada, caused her "severe anxiety and emotional distress and worry about whether she had [contracted] the AIDS virus, about the defendant's own alleged suffering and impending death, and about what the future of her son would be if her son became an orphan." The plaintiff claims that this emotional distress was inflicted intentionally and that the defend-

ant's conduct was "extreme and outrageous." She seeks money and punitive damages.

The plaintiff has liberally intermixed with that claim numerous other allegations concerning fraudulent actions allegedly committed in the course of the defendant's subsequent divorce action against her. The defendant is correct that, insofar as the plaintiff contends that a dissolution judgment against her was fraudulently obtained, her remedy is to move to open that judgment in full or in part on the ground of fraud; *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980); rather than to bring a new action sounding in tort. Even if the plaintiff's claims of fraud concerning the divorce were to be set aside, however, her allegation of the false statement of AIDS would, nevertheless, state a cause of action for intentional infliction of emotional distress.

The tort of intentional infliction of emotional distress was recognized by the Connecticut Supreme Court in *Petyan* v. *Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). Quoting *Murray* v. *Bridgeport Hospital,* 40 Conn. Sup. 56, 62, 480 A.2d 610 (1984), *Petyan* explains that, in order for the plaintiff to prevail on her claim, she must establish four elements: " '(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.' " *Petyan* v. *Ellis,* supra. Each of these elements is alleged in the amended complaint. The defendant points out that "there is no allegation that the emotional distress 'might result in illness or bodily harm.' " That allegation, however, while an essential element of the tort of *unintentional* infliction of emo-

tional distress; *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 683, 513 A.2d 66 (1986); is simply not an element of the distinct tort of *intentional* infliction of emotional distress. "[I]f the enormity of the outrage itself carries conviction that there has in fact been severe and serious mental distress, which is neither feigned nor trivial, bodily harm is not required." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 12, p. 64.

The defendant was undoubtedly correct when he pointed out at oral argument that virtually all dissolutions of marriage involve the infliction of emotional distress. See *Raftery* v. *Scott,* 756 F.2d 335, 341 (4th Cir. 1985) (Michael, J., concurring). For the tort of intentional infliction of emotional distress to be established, however, the plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of everyday life or, for that matter, the everyday dissolution of marriage. As Prosser and Keeton explain, "[w]hen a citizen who has been called a son of a bitch testifies that the epithet has destroyed his slumber, ruined his digestion, wrecked his nervous system, and permanently impaired his health, other citizens who on occasion have been called the same thing without catastrophic harm may have legitimate doubts that he was really so upset, or that if he were his sufferings could possibly be so reasonable and justified under the circumstances as to be entitled to compensation." W. Prosser & W. Keeton, supra, p. 59. Liability exists only "for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause mental distress of a very serious kind." Id., p. 60. "[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility." *Knierim* v. *Izzo,* 22 Ill. 2d

73, 85, 174 N.E.2d 157 (1961). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." 1 Restatement (Second), Torts § 46, p. 73, comment (d).

Under this standard, the court is satisfied that the plaintiff has pleaded a recognizable claim. The court does not doubt that insult, indignity and genuine distress are part and parcel of most, if not all, marital breakups, but there is an enormous difference between these unfortunately routine indignities and a false statement to one's spouse that one has AIDS. The former will doubtless cause sadness and grief, but the latter is likely to cause shock and fright of enormous proportions. The former may now be commonplace in our society, but the latter would, nevertheless, in the language of the Restatement, "be regarded as atrocious and utterly intolerable in a civilized community." If a third party, in an apparent position to know, had intentionally and falsely told the plaintiff that her husband had AIDS, she would undoubtedly have a cause of action against that third party for the intentional infliction of emotional distress. That much follows from the seminal case of *Wilkinson* v. *Downton*, [1897] 2 Q.B.D. 57, holding that a cause of action existed against a defendant who falsely represented to a married woman that her husband had been seriously injured in an accident. The fact that the false speaker is the husband himself should make no legal difference. "When the purposes of the marriage relation have wholly failed by reason of the misconduct of one or both of the parties, there is no reason why the husband or wife should not have the same remedies for injuries inflicted by the other spouse which the courts would give them against other persons." *Brown* v. *Brown,* 88 Conn. 42, 48–49, 89 A. 889 (1914).

In the context of the present case, the matter is, if anything, aggravated by the fact that the person making the statement is the husband since that fact would enhance the verisimilitude of the statement and intensify its likely impact. Whether the plaintiff's claim can be established in fact remains to be seen, but her claim is one that the law recognizes. The motion to strike directed at the entire complaint is, therefore, denied.

The plaintiff's claim for punitive damages is more problematic. "[P]unitive damages may be awarded only for 'outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.' Restatement, 4 Torts § 908, comment (b)." *Triangle Sheet Metal Works, Inc.* v. *Silver,* 154 Conn. 116, 128, 222 A.2d 220 (1966); see *Venturi* v. *Savitt, Inc.,* 191 Conn. 588, 592, 468 A.2d 933 (1983). As discussed above, the defendant's alleged conduct is characterized by just such outrageousness. Indeed, it is precisely that outrageousness that forms the basis of the plaintiff's claim on the merits.

In light of the fact that the plaintiff's underlying cause of action is based on a claim of outrageous conduct, however, the court believes that an additional recovery for punitive damages would not be appropriate. The court agrees with the Supreme Court of Illinois, which has succinctly held that "[s]ince the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive." *Knierim* v. *Izzo,* supra, 88. The plaintiff's claim for punitive damages is, therefore, stricken.