[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] NEMORANDUM OF DECISION
Caroline Dinegar and Natalie Ferringer (plaintiffs), tenured faculty members within the political science department of the University of New Haven, have filed a twelve count complaint against the university, its president, its provost, and its Arts and Sciences college dean (defendants).[1] They allege injuries arising from the defendants' implementation of the "Merit Performance Review," a new methodology for reviewing faculty performance. The plaintiffs assert that imposition of the "Merit Performance Review" changed the categories used to evaluate faculty performance such that "what had been the `average' category was renamed `reasonably satisfactory,' with categories below . . . renamed `minimum satisfactory performance,' `not acceptable,' and `poor'." The plaintiffs assert that this methodology was used to evaluate them and other members of the Arts and Sciences faculty, but was not used to evaluate members of the larger university faculty community. The plaintiffs also claim that the defendants have refused to answer their questions as to how "merit" is judged. The plaintiffs' complaint sounds in breach of contract (counts 1-2); negligent infliction of emotional distress (counts 3-6); intentional infliction of emotional distress (counts 7-8); age discrimination in violation of General Statutes § 46a-60
(counts 9-10); and sex discrimination in violation of Title 46a of the General Statutes (counts 11-12). On October 15, 1997, the court (Silbert, J.) granted the defendants' motion for summary judgment, dismissing counts one, two, nine, ten, eleven and twelve. CT Page 14328
Thereafter, the defendants filed this motion for summary judgment[2] as to counts three through eight, the remaining counts of the complaint. The defendants have also submitted an affidavit and deposition testimony in support of their motion.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law . . ."Thompson and Peck, Inc. v. Division Drywall, Inc., 241 Conn. 370,374, 696 A.2d 326 (1997).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . ." Home Ins. Co. v. Aetna Life andCasualty Co., 235 Conn. 185, 202, 663 A.2d 1001 (1995). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue . . ." Id. "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and document." Connecticut National Bank v. Great NeckDevelopment Co., 215 Conn. 143, 148, 574 A.2d 1298 (1990). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." Home Ins. Co. v. AetnaLife Casualty Co., supra, 202-03.
 I Negligent Infliction of Emotional Distress (Counts 3-6)
The defendants move for summary judgment on counts three through for the reason that the plaintiffs' claims for negligent infliction of emotional distress are legally and factually insufficient.[3] The defendants argue that the plaintiffs' have failed to plead and prove unreasonable conduct on the part of the university, president, provost and dean in their experimental implementation of the performance review system: "[T]he [Plaintiffs'] claim is essentially that they did not like or understand the system and that the [Defendants'] conduct was negligent because it should have realized that a performance evaluation system would cause these Plaintiffs emotional CT Page 14329 distress."
The plaintiffs argue in opposition that the defendants' actions were designed to create anguish in the plaintiffs and thus were in fact unreasonable within the meaning of the tort. They reason that because the plaintiffs were tenured faculty members who could not be fired, the defendants sought to make them unhappy enough to voluntarily resign. The plaintiffs find evidence of such design in the "initial exceptionally low ratings" the plaintiffs were given "concomitantly with overt pressure to retire or otherwise leave the university; [and in the] pattern of abusive conduct directed against them . . ."
"[A] plaintiff may recover for [negligent infliction of] emotional distress if `the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that the distress, if it were caused, might result in illness or bodily harm.'" Barrett v. Danbury Hospital,232 Conn. 242, 260, 654 A.2d 748 (1995), citing Montinieri v.Southern New England Telephone Co., 175 Conn. 337, 345,398 A.2d 1180 (1978).
In Barrett v. Danbury Hospital, supra, 232 Conn. 262, the Supreme Court affirmed the grant of the defendants' motion for summary judgment on a negligent infliction of emotional distress claim. The plaintiff husband sought emergency room care for abdominal pain and was placed on a stretcher that was saturated with the blood of a prior patient. The defendant doctor performed two rectal exams to determine the source of the blood and the plaintiff claimed that it was in the course or these exams that blood was introduced into his rectum. The plaintiff husband alleged that he suffered anxiety and fear that he might contract the AIDS virus or some other blood-borne disease.
In affirming the trial court, the Supreme Court concluded that the plaintiff husband's distress was unreasonable and thus, the defendants could not be liable for it: "the fear or distress experienced by the plaintiffs [must] be reasonable in light of the conduct of the defendants." Id., 261. The court found that the plaintiff husband's fear of contracting AIDS was unreasonable as he could not offer evidence in support of his allegation that blood had been introduced into his rectum via the exam; id., 254; he could not refute the doctor's affidavit that no blood had been introduced; id.; and he could not dispute the test results of the rectal exam which established that no blood had been introduced. CT Page 14330Id. Because the plaintiff failed to show that he was placed in any risk," he plaintiff's fear was not reasonable as a matter of law . . ." Id., 262. As "the fear [was] unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." Id.
In Collins v. Gulf Oil Corp., 605 F. Sup. 1519, 1523 (D. Conn. 1985), the district court granted the defendants' motion for summary judgment because the plaintiff failed to state a claim for negligent infliction of emotional distress.[4] The plaintiff alleged that he and his family suffered great emotional distress as a result of the defendants' (1) sponsoring his visa to relocate to Stamford, Conn. and later terminating his employment with the knowledge that it would result in revocation of his visa; and (2) in representing that his assignment would last for three years; and (3) in failing to comply with established performance evaluation procedures.
In holding that the degree of anxiety arising from the termination of employment was not sufficiently great to maintain a claim for negligent infliction of emotional distress, the court noted that the only physical problem to which the plaintiff testified was a digestive disorder (burping) which predated his working for the defendants. "Plaintiff has not disputed this fact nor introduced any evidence from which it can be inferred that defendants conduct was so egregious that it should have realized that it involved the unreasonable risk of causing emotional distress. Montinieri at 337, 398 A.2d 1180. In essence, plaintiff would have us hold that any time an employer does not comply with performance evaluation procedures and terminates an employee that it has negligently inflicted emotional distress. Such is not the law." Collins v. Gulf OilCorp., supra, 605 F. Sup. 1523.
The court finds that there are no issues of material fact and the defendants are entitled to judgment as a matter of law as to the plaintiff Dinegar's claim for negligent infliction of emotional distress. In deposition submitted by the defendants, Dinegar describes her emotional distress as follows: "I think that the emotional distress is that I have no future as I planned it and as I worked for it, never hearing from the university to which I was attached that there was a problem." Dinegar Aff., p. 72. Dinegar goes on to explain that the psychological care which she receives is a follow up to terminal cancer care and not the CT Page 14331 result of treatment from the university. "I am not claiming emotional psychiatric distress as the result of anything that the University of New Haven has done to me or for me." Dinegar Aff., p. 72. Even "viewing the evidence in the light most favorable to the nonmoving [plaintiffs]"; Home Ins. Co. v. Aetna Life Casualty Co., supra, 235 Conn. 202; it does not appear to the court that Dinegar suffered emotional distress sufficient to make out the tort; rather, it appears that Dinegar is claiming that some aspect of her relationship with the university has been damaged. The nonmovant plaintiffs have not submitted evidence showing that there is an issue of fact as to whether Dinegar suffered emotional distress sufficient to make out a claim;[5]
thus, the defendants' motion for summary judgment on Dinegar's negligent infliction of emotional distress claim (counts three and five), is granted.
The court also finds that there are no issues of material fact and the defendants are entitled to judgment as a matter of law as to the plaintiff Ferringer's negligent infliction of emotional distress claim (counts four and six). In the deposition submitted by the deferdants, Ferringer describes her emotional distress as follows: "I suppose in my mind there is always, as it would be with any; faculty member, a concern that [the new ratings] could be used and, indeed, they could be used quite productively [for a tenure attack] . . .I think the inability to know what I can do . . . to better the condition that I have there, has been an unremitting source of frustration. I do believe that it has caused distress in the sense one does not sleep, one worries about these things. I feel an antagonism toward the institution . . .that I never used to. Yes, there's a real change in me." Ferringer Aff., pp. 46-7. While Ferringer has averred that she has suffered distress in that she does not sleep and worries, the court finds that said distress is unreasonable in light of the defendants' acts. By affidavit, dated May 12, 1997, the defendant university provost Uebelacker, averred (1) that the results of the new evaluation methodology "were never used as the basis for any decisions concerning the faculty, including wage adjustments or promotional opportunities"; (2) that since January 1993, all faculty raises have been either across the board or based on an equity plan; (3) that only the provost and dean were aware of faculty ratings under the new methodology; and (4) that the ratings were kept confidential. Uebelacker Aff., pp. 2-5. Ferringer, in opposing summary judgment, does not submit evidence showing that an issue of fact exists as to the Uebelacker averments, nor does she submit CT Page 14332 evidence showing that the evaluation methodology was used to attack her tenure or to condition her raises or promotional opportunities.[6] Because "[her] fear [was] unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." Barrett v. DanburyHospital, supra, 232 Conn. 262. The defendants' motion for summary judgment on counts four and six, containing Ferringer's negligent infliction of emotional distress claim, is granted.
 II Intentional Infliction of Emotional Distress (Counts 7-8)
The defendants also move for summary judgment on counts seven through eight for the reason that the plaintiffs' claims for intentional infliction of emotional distress are legally and factually insufficient. In support, the defendants argue that neither the allegations of the plaintiffs' complaint nor the facts adduced during discovery nor those provided by affidavit reveal conduct by the defendants which is sufficiently extreme or outrageous to constitute the tort of intentional infliction of emotional distress.
In opposition, the plaintiffs argue that the question of whether conduct is "`extreme and outrageous' within the meaning of the established law is a jury question and the court should not usurp the role of the jury . . ." In addition, the plaintiffs argue that conduct no more offensive than the conduct they allege has been found to be extreme and outrageous by both Connecticut courts and courts in sister jurisdictions.
"In order for [a] plaintiff to prevail in a case for liability under the intentional infliction of emotional distress [tort], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis,200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability for intentional infliction of emotional distress requires `"conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress CT Page 14333 of a very serious kind."' Petyan v. Ellis, supra, 254 n. 5, quoting W. Prosser W. Keeton, Torts (5th Ed.) § 12, p. 60. Thus, `[i]t is the intent to cause injury that is the gravamen of the tort.' Hustler Magazine v. Falwell, 485 U.S. 46, 56,108 S.Ct. 876, 99 L.Ed.2d 41 (1988) . . ." DeLaurentis v. New Haven, 220 Conn. 225, 267, 597 A.2d 807 (1991). "`[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility.' Knierim v.Izzo, 22 Ill.2d 73, 85, 174 N.E.2d 157 (1961)." Whelan v.Whelan Co., 41 Conn. Sup. 519, 522-23, 588 A.2d 251 (1991). Thus, "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."Id. The "extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge where it would not be so if he did not know." Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 20,597 A.2d 846 (1991), citing 1 Restatement (Second), Torts. § 46, Comment (f).[7]
As a threshold matter, whether the conduct complained of is sufficiently extreme or outrageous is a determination for the court in the first instance. Parsons v. United TechnologiesCorporation, Sikorsky Aircraft Division, Superior court, judicial district of Fairfield, No. 280394 (March 1, 1996), affirmed in part, overruled on other grounds, 243 Conn. 66, 700 A.2d 655
(1997). The facts discussed supra in the court's evaluation of the plaintiffs' claim of negligent infliction of emotional distress claim are the same facts relied on by the plaintiffs for their claim of intentional infliction of emotional distress. These facts, however, even "construe[d] in a light most favorable to [the plaintiffs]"; RK Constructors, Inc. v. FuscoCorp., supra, 231 Conn. 384; do not display the deliberate will to harm that is characteristic of outrageous behavior. SeeSubbe-Hirt v. Bacciagaluppi, supra, 94 F.3d 114-15 (predatory behavior found to be outrageous); Johnson v. Teamsters Local 559,supra, 102 F.3d 25 (prior knowledge of employee's particular weakness was part of the outrageous character of surveillance by supervisor).[8]
CT Page 14334
The defendants' motion for summary judgment on counts three, four, five, six, seven and eight, containing the plaintiffs' claims is granted.
BY THE COURT
Bruce L. Levin Judge of the Superior Court