Sandra BROWN, Plaintiff,

v.

**TOWN OF EAST HADDAM, East Haddam Board of Education and Roderick W. Story, Defendant.**

**No. 3:98CV02139 (WWE).**

United States District Court, D. Connecticut.

June 28, 1999.

John R. Williams, Williams, Polan & Pattis, New Haven, CT, for Sandra Brown.

Michael J. Lefebvre, Michael J. McAndrews, McAndrews & Lefebvre, Hartford, CT, for Town of East Haddam Bd. of Educ.

Thomas R. Gerarde, Elizabeth Ann Fitzsimmons, Howd & Ludorf, Hartford, CT, Mark J. Sommaruga, Sullivan, Schoen, Campane & Connon, Hartford, CT, for East Haddam Bd. of Educ., Roderick W. Story.

### RULING ON MOTION TO DISMISS

EGINTON, Senior District Judge.

### INTRODUCTION

Plaintiff Sandra Brown ("Brown") brings the present action against the Town of East Haddam (the "Town"), the East Haddam Board of Education (the "Board") and Roderick W. Story ("Story"), who was employed as the principal at the Board's

Nathan Hale Ray School. Brown, as alleged in her complaint, contends that the defendants' actions have caused her to suffer a "violation of her First, Fourth, Ninth and Fourteenth Amendment right to family life, family association, family integrity, and due process of law." Primary jurisdiction is based in 42 U.S.C. § 1983. Brown further alleges that the defendants' actions were "extreme and outrageous" and have caused the plaintiff severe emotional distress.

Defendants have moved to dismiss the complaint.

## STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and the Ruling on, this motion.

Brown is the mother of a daughter who was age sixteen and was a student at Nathan Hale Ray High School at the relevant time period, i.e., November 7, 1995. Plaintiff alleges that on the morning of November 7, her daughter arrived at school with a bruise under her left eye. When questioned about her injury, plaintiff's daughter claimed that she had an argument with her mother that morning and that her mother had swung her arm backward at her daughter, causing the bruise. Plaintiff's daughter further stated that the plaintiff-mother had been abusive for a long time and that she did not want to live any longer in the maternal home. As a result of the plaintiff's daughter's report of abuse, the teacher informed the high school principal, defendant Story. Story immediately transmitted the daughter's complaint to the Connecticut Department of Children and Families ("DCF").

Plaintiff admits that Story, in his position of school principal, was obligated un-

der Connecticut General Statutes § 17a–101 to cause a report to be made to DCF whenever he "has reasonable cause to suspect or believe that any child under the age of eighteen years has had physical injuries inflicted upon [her] by a person responsible for such child or youth's heath, welfare or care ... other than by accidental means or has injuries which are at variance with the history given of them or is in a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual abuse, sexual exploitation, deprivation of necessities, emotional maltreatment or cruel punishment, or has been neglected." Brown, however, claims that this statutorily-mandated report was "reckless" in the defendants knew or should have known: 1) "rebellious adolescents could be expected on some occasions to make false accusations of abuse against their parents in order to obtain independence or otherwise to further their own adolescent agendas"; 2) plaintiff was a widow with two children under college age; and 3) "plaintiff's daughter had been engaged in acts of adolescent rebellion, hanging out with inappropriate companions, consuming inappropriate substances and engaging in sexual activities not appropriate for her age."

Plaintiff further alleges that Story made no independent investigation of his own before turning the matter over to DCF.[1]

As a result of defendants' actions in making this statutorily-mandated report, Brown alleges that she and her family were subjected to an extensive investigation by DCF, were required to attend court proceedings, and suffered the permanent disruption of their family life.[2]

## LEGAL ANALYSIS

### I. *The Standard of Review*

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all

---

**1.** By statute, the investigation was required to be done by DCF, not the reporting individual. See Conn. Gen.Stat. § 17a–101, § 17a–101(b) (1995), amended by Public Act 96–246. Such amendment came after the time period relevant to the actions taken in this litigation. In

any case, it would not alter the duties required of Story.

**2.** Plaintiff does not reveal the outcome of these proceedings.

factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (*citing Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993).

## II.  *The Standard As Applied*

### A.  *The Constitutional Claim*

▮ The United States Supreme Court has long recognized that the intangible fibers that connect parent and child merit reasonable constitutional protection through the Due Process Clause of the Fourteenth Amendment. *See, Lehr v. Robertson*, 463 U.S. 248, 256, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's "desire for and the right to 'the companionship, care, custody, and management of his or her children'", is an interest that the Supreme Court has termed "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599, *quoting Lassiter*, 452 U.S. at 27, 101 S.Ct. 2153.

▮ At the same time, however, the Supreme Court has never recognized the right to familial integrity as absolute or unqualified. *See Lehr*, 463 U.S. at 256, 103 S.Ct. 2985 (relationship between parent and child merits constitutional protection in "appropriate circumstances"); *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 ("But the family is not beyond regulation in the public interest. . . ."). Furthermore, the government itself has a compelling interest in the health, education, and welfare of children as future citizens. *Santosky*, 455 U.S. at 766, 102 S.Ct. 1388 (state has *parens patriae* interest in welfare of child). In determining the nexus of rights between parent, child and state, a parent's amorphous liberty interest is continually balanced against a countervailing state interest: the preservation of the welfare of children. What may be distilled from these precedents is that the state interest can, and at times does, supersede a parent's interest in raising a family free from interference.

▮ This is such a case. Connecticut has set forth a statutory scheme for the reporting of *suspected* child abuse. Not only is such mandatory, it carries a fine for an individual who is charged with reporting same and fails to do so. Story was correct in following the mandatory statutory scheme. The state may act in the best interest of the child, even when it interferes with the structure of the family and denies parents the autonomy to raise their own child. Connecticut has determined to do just that in the situations set forth in its statutory scheme which plaintiff does not challenge as unconstitutional. Neither does she challenge the constitutionality of the DCF procedures which she apparently participated in willingly, as may be inferred from the complaint.

The fundamental flaw in Brown's case against Story is that the **facts** do not add up to **any** constitutional violation, including a deprivation of plaintiff's liberty interests in the care, custody, and control of her child. If the Constitution, as interpreted

by the Supreme Court, relates at all to the facts of this incident, it **permits** Story's conduct, since he acted pursuant to a mandatory state law that is valid under the due process clause. To find for plaintiff, this Court would he to hold that substantive due process protections formulated by the Supreme Court to protect the structure of the family extend so broadly as to eclipse the procedural due process obligations of the state. The Court will not so hold. The right to family integrity does not include the constitutional right to be free from investigations of child abuse. *Hodge v. Jones,* 31 F.3d 157, 164 (4th Cir.1994); *Watterson v. Page,* 987 F.2d 1, 8 (1st Cir. 1993).

### B. *The State Law Claim*

Defendants have moved to dismiss the claim of intentional infliction of emotional distress on the ground that their conduct was not extreme or outrageous as a matter of law.

 In order to prevail in a claim for the intentional infliction of emotional distress, four elements need be established: (1) that the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendants' conduct was the cause of plaintiff's distress; and (4) that the emotional distress was severe. *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. New Haven,* 220 Conn. 225, 266, 597 A.2d 807 (1991). The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. *Whelan v. Whelan,* 41 Conn.Supp. 519, 522–23, 588 A.2d 251 (1991), *citing* 1 Restatement (Second) of Torts § 46, p. 73, comment (d).

The Court finds that defendants' conduct is not extreme or outrageous within the meaning of Connecticut law. The facts as pleaded allege that defendants were acting within the scope of their mandatory statutory duty. "[B]ecause the defendants were acting pursuant to the commands of our judiciary and our legislature, their conduct, as a matter of law, cannot be considered extreme or outrageous." *Meehan v. Yale New Haven Hospital, Inc. et al.,* 1996 WL 168055 *7 (Conn.Sup., March 12, 1996).

### CONCLUSION

Reviewing the complaint in favor of plaintiff, and drawing all inferences therefrom in her favor, the Court holds that she has failed to state any cause upon which relief could be granted. Accordingly, defendants' Motion to Dismiss [Doc. No. 7] is GRANTED.

The Clerk is ordered to close this case and enter judgment for defendants.

SO ORDERED